May it please the Court. Counsel. Kyle Busse for Appellant and Plaintiff Kathy Howard. Busse. Before getting into the substance of plaintiff's claims, I'd like to briefly address the matter of three claims which were dismissed by the district court based on what seems to have been a miscommunication between plaintiff's counsel and the court. Those were plaintiff's FEMLA and OFLA retaliation claims, as well as plaintiff's medical leave-based common law wrongful discharge claim. After the summary judgment hearing, the court concluded incorrectly that plaintiff's counsel clarified that Howard was alleging an opposition claim under 2615A2 and no claim under 2615A1. That's at ER 164. The colloquy on that subject began with the district court observing, it looks like you have a claim for interference under 2615A1. The question is, are you asserting a claim for opposition under 2615A2? When it came time for plaintiff's counsel to respond, he stated that plaintiff's FEMLA claim primarily relates to the discrimination for inquiring about or requesting FEMLA or OFLA leave. Although plaintiff's counsel did state later that plaintiff did not really have an interference claim, he immediately clarified that while plaintiff did not have an interference with her ability to take FEMLA leave, and that defendant didn't prevent her from doing so, he said they retaliated against her for inquiring about and requesting it under 2615. That's at ER 155F. Such a retaliation claim as the one described by plaintiff's counsel is one form of an interference claim, not an opposition claim. While plaintiff's counsel may have failed to clearly articulate the label for plaintiff's FEMLA interference claim, he was very specific that plaintiff's FEMLA claim primarily relates to the discrimination for inquiring about or requesting FEMLA or OFLA leave. That is not a description of an opposition claim. That's a description of a retaliation slash interference claim. At oral argument, the district court seemed to grasp that distinction, stating, so you're relying on a retaliation claim here. You're not relying upon a claim that when she made the request, they in some fashion interfered with her ability or her right to take the leave. That conclusion followed plaintiff's counsel's further assertion that defendant retaliated against her for inquiring about and requesting it under 2615, and a response to the court's question regarding how defendant retaliated, wherein plaintiff's counsel explained that defendant retaliated against her after she had requested FEMLA leave by putting her on probation and then terminating her for pretextual reasons. Under the FEMLA, a retaliation claim is one form of an interference claim, not an opposition claim. Thus, plaintiff's counsel clarified that she did contend plaintiff interfered with her FEMLA rights by discharging her for inquiring about or requesting FEMLA leave. As you can see in the ER 4 and 5 plaintiff's amended complaint, the plaintiff alleged defendant discriminated against plaintiff by terminating her in substantial part for inquiring about and or requesting medical leave. So the point is that there was an insufficient showing made, not as I gather your argument so far today, is legal interpretation, legal construction of the claim. I think we're – I think what we need to hear about is the showing, the level  of detail that was made, which would raise a genuine issue of material fact. Right. And that's correct. And as to retaliation under FEMLA and OFLA and as to wrongful discharge, correct? Right. And not as to disability discrimination. That's right. The disability discrimination claim was conceded. All right. So to the substance of it, the reason I wanted to point that out is the Court failed to analyze the retaliation claim and in doing so dismissed the three separate claims, the FEMLA retaliation claim under the interference prong, the OFLA retaliation claim, and also the wrongful discharge claim based on requesting medical leave. So I thought that was important to point out. But now to the substance of plaintiff's claims, the district court correctly concluded that plaintiff had adduced evidence sufficient to satisfy her prima facie case on each claim it did actually analyze. Where the district court erred was in finding that plaintiff did not present evidence creating a question of fact as to whether defendant's stated reason is pretextual. So going straight to that pretext argument – Well, let me stop you for a minute. Did the district court say that the prima facie case was proven or just that, assuming one was, she doesn't meet the requirement of rebutting the employer's explanation? The district court stated that she had presented sufficient evidence to move past the prima facie case and into the pretext analysis. Was there any evidence of discrimination or retaliation other than based on timing? Well, all of the evidence of pretext goes to – goes back to that issue of causation, whether the discrimination was actually a part of the motivating factor. And so I think the pretext and the causation issues work together. But timing under Thomas is sufficient alone to move past that prima facie case. And the district court, we believe, correctly held that the prima facie case was satisfied, and so he did move on to the pretext issue. Other than by timing? Based on timing, the court moved on. This Court has stated that a discrimination plaintiff may demonstrate pretext by adducing evidence an employer's stated reason for termination is inconsistent or otherwise not believable. That's Chang 225F3rd 1115 and 1127. Plaintiff has adduced evidence that defendant's stated reason for termination is unworthy of credence because the justification has changed since the time of the plaintiff's termination, and defendant has retracted one of its original justifications for termination. Well, but pretext isn't shown if an employer just supplements its explanation without a retraction of any reason, is it? No. Under Villarimo, this Court has said that simple supplementing of the stated reason will not be evidence of pretext, but in this case And further, pretext isn't shown even if there is a supplementation unless the reasons are conflicting, which they're not here, are they? I believe they are, Your Honor. Are they conflicting? They are conflicting because Mr. Price testified at Plaintiff's unemployment hearing that the only reason, the only reason plaintiff was terminated was for copying records. Therefore, any stated reason in addition to that only reason would conflict with his testimony, especially considered in the light most favorable to plaintiff. When asked the reason he decided to discharge plaintiff at Plaintiff's unemployment hearing, Mr. Price responded, Mr. Howard admitted to me that she had copied medical records. That's at ER 135. The questioner later asked, Mr. Price, so it's your testimony that the only reason you fired Ms. Howard was because she copied medical records. Mr. Price responded, that is correct. That's at ER 136. That reason is also or that evidence is supported by the fact that at Plaintiff's termination meeting, defendant referred to its reason for termination six times. ER 127 and 128 are the notes of the meeting. All six times, Mr. Price stated plaintiff was terminated for copying medical records. So there is evidence that the only reason Mr. Price stated that the only reason for termination or, excuse me, there is evidence that Mr. Price's stated reason for termination was solely that she copied medical records. Now they're saying, well, it was removal of medical records. But at the time, that was not what Mr. Price said, and he testified that it wasn't. One additional piece of evidence that Plaintiff's removal of records was not in Price's mind is that he never asked them to he never asked her to return them. After he terminated her. So, in addition to the conflicting reason, by adding something beyond that sole factor, defendant has also tracked- You're suggesting that it is conflicting, and I now have your reasons. Let's suppose I suggest that it isn't conflicting. How do you get there? Well, they've also- Is this your best argument? Well, I think this is a- Is this a conflicting argument, or is there really any evidence here? I mean, if we talk about the copied records, you suggest that copied records couldn't, has got to be pretext, but she'd previous, because she'd previously copied records. However, if I suggest that their explanation is not conflicting, previously, yes, she did copy records, but she didn't ever take them home. They were made for personal- These were made for personal purposes and taken home. Removing records was fundamentally different when you take them home from the hospital. Hospital's been worried about this problem, and the deposition confirms this. So, that's the testimony I have, or what's in the record. How do I get past that? What evidence did you give other than that? Well, first of all, I think that you just made one of our points for us, and that is that removing records from the premises is fundamentally different than copying records, and that fundamental difference under Payne v. Norwest Corp. suggests that it's pretext to add that justification for termination. Second- If the reasons are conflicted. Well, under Payne, it says fundamentally different justifications is evidence of pretext. But in addition to what we believe to be conflicting evidence, especially considered in the light most favorable to plaintiff, as we're required to do here, there's also evidence that defendant has retracted one of its stated reasons for termination. At the time of the termination meeting, they said that she was terminated for two reasons. One, the 30-day probation, and two, the copying of medical records, no mention of removal. Now, the defendant is asserting that the discipline that led to the 30-day probation has nothing to do with the termination. That's at, they're answering brief at 29. In Villa-Remo, they cite Johnson v. Nordstrom, a Seventh Circuit case, which states that retraction of a justification for adverse employment is evidence of pretext. So, some of the evidence that we're pointing to is that the justification for termination is conflicting, has changed, and one has been retracted. We also have, as we alluded to earlier, the timing evidence. There's also evidence that- Well, the timing evidence is really not too helpful to you, is it? Because the copying and taking the records home took place after the reporting of the incident by your client to the board, didn't it? That's true, it did. So, if we look at timing alone, the fact that she copied the records and took them home is certainly closer to the timing of the discharge than the fact that your client reported the activity to the board. Well, that's true, but we're not looking at timing alone. We also have evidence that they showed discriminatory bias against her before that copying of records ever occurred. The meeting of November 9th, they came up with four new disciplinary reports that she had never been made aware of before, and they violated their own policies and procedures by failing to present her with those reports. They failed to investigate claims of harassment that she made and that was supported by an independent witness, and they also failed to take the surrounding circumstances of her termination into account before they made the decision to terminate her on the 13th. I'd like to reserve a little bit of time for- You may do so, counsel. Thank you very much. We'll hear from Milwaukee Convalescent. May it please the Court, Tom Sondrak, appearing on behalf of the Defendant Chapel Lee Milwaukee Convalescent Hospital. I guess I'd like to just respond to a few of the points made by counsel this morning. The last point he made that the probation meeting, this is the first meeting on November 9th, the suggestion that those were new reports that had been manufactured. In fact, they were not. Reports that had been generated in the previous days before that meeting, including as far back as a couple weeks before, and they involved conduct that had been an ongoing problem for the plaintiff in this case. And if our record, if you look at SCR 167 through 176, you will see the records that led to this discipline, which was the probation. And so then I'd like to turn to this next point, the theory that we are somehow retracting a ground for termination. That's not accurate. What we said in our brief was that the discipline that led to the probation was not a grounds for termination, and that's correct. The grounds for termination that were listed in the contemporaneous notes taken at the termination meeting that plaintiff is latching onto here, said due to the fact that one, Kathy was on 30 days probation, and two, copying records is a serious violation. I informed Kathy that the facility was terminating her employer, her employment. So that's completely different. The probation that she was on, and this is at SCR 180, the terms of her probation provided that if there were any serious issues in the next 30 days, it's a 30-day probation, she would be terminated. Lo and behold, five days after she was put on probation, something very serious occurred. And there's no dispute. Plaintiff admits the conduct in which she engaged. And that goes now to the next point that counsel made, which is this effort to distinguish the references in the record to copying a patient's medical records and the removal of them from the workplace. Well, and frankly, given the case law, he's going directly at the idea that the copying is all you ever said to begin with, and now you're not really saying copying, you're saying copying and taking from the premises, which he's suggesting is a conflicting reason as to why you did what you did. Correct. And as Your Honor's alluding to, cases by this Court, including Villarimo, indicate that grounds that are consistent and supplement the explanation are perfectly appropriate. But in fact, I think even if you look at the contemporaneous record, again, the notes of the termination hearing, and you see what these references to copying are, and you look at the give and take that was going on, it's clear they're not just talking about copying here. It's not as if she copied them and left the records in the copying machine. The question they ask her, for example, is, Kathy, have you ever known us to alter a medical record here? And the answer was no. And so the next question is, well, then why did you copy these records? In other words, why did you take these for yourself? That's what they're getting at in the questions. And as I understand it, the copying previously, from reading the record, the copying she'd previously done was to give to the hospital. That's correct. In every instance. That's correct. And this copying was not done for giving to the hospital at all, but for personal purposes. That's correct. And when this first issue first arose, and it became an issue, was at the EAB hearing in the State Unemployment Appeals Board. And there was this was the argument that Plaintiff was making in that proceeding was, well, wait a minute, I've copied records before. And so the whole issue was raised at that point. And it became clear, well, you copied these records before, but you were giving them to your superiors. Well, yes, correct. Did you ever take them from the workplace? No. And clearly, it was a different situation altogether. And that's how this issue of copying versus removal came to the fore for the first time. And in fact, in that EAB hearing, which again, counsel is relying on this for testimony by Mr. Price, that it was the copying of the records. He clarifies, and that's at SCR 214, that what he's focused on here is not merely the copying, but it's the copying and taking these from the workplace. He was aghast that this had happened. He'd never seen this happen. And the direct question to him was, well, why did you discharge her for this? And that was his answer. He says, this is we can't do this in our, in our, it's against, and I think that's what you get back to here. There's no question in this record, it's undisputed, that plaintiff engaged in substantial misconduct. It's conduct she admits. It's conduct that is in direct violation of the laws that govern her profession. It's conduct that is in direct violation of defendant's written policies, and in fact, that those policies direct immediate termination for her. Well, I guess I'm going to go back to summary judgment. We're here on summary judgment. So we got a district judge who he's, let's say that he assumed that she could present a crime of patient case, and therefore moved to the second of the analysis, which was that the employer ought to have a good reason for doing the termination. The employer comes up with the good reason. And now we're at the pretext phase. What is the standard of review for the pretext? Well, the standard is still de novo review. It's a summary judgment. It's de novo. And what does the district judge have to do in determining the pretextual? Well, he has to determine whether. Isn't this a summary judgment, after all? Absolutely. Aren't we to give every benefit of the doubt to the plaintiff in this particular situation? Yes. And in this particular situation, don't we have that there close to the time where she was terminated, she's asking for a form, she's asking for the opportunity to have family leave. The plaintiff never gives her the form. Doesn't ever do anything to get it to her. In fact, instead says, the plaintiff's agent says, why are you so sick so much? We can't have this. And they only say they'll give her a form if they have some documentation. And then they want a doctor to give an excuse before they do anything.   the jury. How can I, on summary judgment, suggest that this is not sufficient evidence to at least go to the jury? Well, because, and, Your Honor, I think you've done a very good job of looking at the evidence in the light most favorable to the plaintiff there. Well, I've tried. I think that. I mean, I'm giving him every benefit of what I think he said. Well, I think he said that. I think if you look at the actual evidence here, it's a little bit different. The request for the form was made some months before. But this was a continuing, she raised this again. She says, you know, I've asked for this FMLA form. When she finally raised that with Mr. Price, he said, well, she'd never had any trouble asking for leave. She simply followed the handbook. And so this idea of an FMLA form concededly, and I think the district court refers to this, was not something that the administrator was familiar with. But he said, well, are you saying that you have chronic, which she then said for the first time, was I have these chronic intermittent illness. And he said, well, would you please give me a doctor's note for that? And she did. And he said, you know, there's no problem here. That's a good interpretation from your side of the picture. But if I see it in the summer of 2007, she asked for the family medical leave. And she's told she's got to get the form. In September, she writes Price asking for the form. The dependents' employees said they'd get the form, but they never did. And then in September the 24th, she asked the plaintiff, or she asked the plaintiff why she's sick so much, we can't have this. They won't give her a form until she gets some documentation. Then finally, after she gets the doctor's report, she gets the form. And that is not very far before she is terminated. Yeah, but she, I guess this issue of the form is what throws me. She was, whenever she asked for time off, she received it. And so, I don't even know that, I'm not sure what the FMLA form is. It's never been produced in the evidence here. But the point is, and I think what it- It's quite hard for the plaintiff to produce it. She never got it, no. I'm just giving you the- The bottom line is every time she asked for time off, and as late as October 26th and 27th in this record, she got it off. And I would submit that it's not simply looking at it in our, the light most favorable to us, everybody testified consistently that plaintiff was satisfied with the resolution of her FMLA request, including the plaintiff. And so I would just refer the court to SCR 65 and 70 where she concedes what Mr. Price told her, which was you will have leave whenever you want it. In fact, he gave her more than she was entitled to under the law. And it's consistent with Mr. Price's testimony at SCR 92 to 94. And Ms. Swan's testimony at 104 to 105. And I think the other aspect of this, Your Honor, is when you look at this record, there's no dispute that she then engaged in this misconduct. And that's why, and you asked what your standard is. And I will confess that we relied on the shorthand, which is used by this court in its cases, that once she, once the presumption drops out of the case and you're left with was this pretext or not, the plaintiff has to show by a preponderance of the evidence that. Now, of course, on summary judgment, it's whether a reasonable juror could find by a preponderance of the evidence that. Well, and the court is supposed to, in those instances, giving the plaintiff every deference, every benefit of the doubt for the facts there under, suggests that there is not a way for the juror to suggest that this is a pretext. That's correct. And I believe that the district court did that in this case. And that the result that was reached is consistent with that standard. In the end, all the plaintiff has is the timing to which you've referred. The, you know, the isolate, the, this concept of this reporting of a nurse, the evidence simply does not support. And I urge you to look at the evidence that plaintiff is relying on to suggest that any of the decision makers here even knew that plaintiff had reported Nurse O'Dell at the time she was terminated. Because it's just not there. In fact, Nurse O'Dell did not return to the workplace until after the ball had already started rolling here for the plaintiff. But the bottom line is, Your Honor, absolutely. You look at the evidence in the light most favorable to the plaintiff. But in the end, they've got to come forward with more than on the one hand, well, I engaged in protected activity. And on the other, you took an adverse employment action. The plaintiff still needs to come forward with evidence that shows you took that adverse employment action because I engaged in protected activity. And there's just no evidence of that on this record. The evidence is that she was terminated for a wholly legitimate reason. Unless the court has further questions, I'll rest. Thank you. Thank you, counsel. Mr. Busse, you have some reserved time. Thank you, Your Honor. Just a few points that I think need to be clarified. Defense counsel stated that Mr. Price clarified his position at the unemployment hearing by saying that he was actually terminating her for copying and taking. Well, that's actually a completely inaccurate characterization of the testimony. Copying and taking was never something that Mr. Price said. He was asked at SER 214 why he terminated plaintiff and whether he would have terminated plaintiff if she hadn't copied medical records,  and he stated it is a very serious offense to take confidential records. That doesn't say copying and taking. In addition- Mr. Busse, before you get too far down that, because let me ask you a question. What evidence do I have in the record that any of those who terminated your client had any knowledge about the report of O'Dell to the board? Well, Your Honor, there's evidence that Mark Ivers, Bill Price, and Tammy Swan all had knowledge. Mark Ivers- Where do we find that? ER 54, plaintiff tells Mark- Go ahead. Plaintiff tells Mark Ivers she's going to report defendant. ER 63, Ivers was present at the termination meeting with Price and Swan, and at 64, Price conferred with Swan and Ivers before they terminated plaintiff. Ivers knew Swan, or plaintiff, was going to make this report, and Swan and Price both knew that the report was made. The reason that they knew is that O'Dell discussed the letter confirming that a complaint had been filed against her with Price, ER 86, and O'Dell suspected it was plaintiff who had made the report, ER 102. Again, Price conferred with Swan and Ivers before he terminated plaintiff, and Ivers was told by plaintiff that she was going to make a report. And as far as Tammy Swan goes, at ER 102, O'Dell discussed the letter with Swan. After she returned to work on November 8th, O'Dell suspected that plaintiff was the person who complained, ER 102. And again, Swan was there with Price and Ivers at the termination meeting, where they discussed reasons to terminate plaintiff. So I think that there's- Thank you. I just wanted you to- Thank you. I think it's really important to clarify this point. Counsel, this is your last point. You are over time. Go ahead. At the unemployment hearing, Mr. Price did not clarify by saying taking records. He said taking, and he didn't say taking records. He said to take. But he said to take before plaintiff's counsel asked the clarification question, are you stating that the only reason you terminated her was for copying records? That occurred later. It was plaintiff's counsel who was clarifying, not Mr. Price or defense counsel. Thank you, counsel. The case just argued will be submitted for decision.
judges: Whyte, O'scannlain, Smith M.